1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9    GEORGE E. JACOBS IV,                     CASE NO. 1:06-cv-01280-AWI-NEW (DLB) PC

10                          Plaintiff,        ORDER REQUIRING PLAINTIFF TO EITHER
                                              FILE AMENDED COMPLAINT OR NOTIFY
11          v.                                COURT OF WILLINGNESS TO PROCEED
                                              ONLY ON COGNIZABLE EXCESSIVE
12   ALLEN K. SCRIBNER, et al.,               FORCE, DENIAL OF MEDICAL CARE, AND
                                              TORT CLAIMS
13                          Defendants.
                                              (Doc. 1)
14   _____/

15   I.     Screening Order

16          A.     Screening Requirement

17          Plaintiff George E. Jacobs IV ("plaintiff") is a state prisoner proceeding pro se and in forma

18   pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action on

19   September 18, 2006.

20          The court is required to screen complaints brought by prisoners seeking relief against a

21   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

22   court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

23   "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

24   monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

25   "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

26   dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

27   claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

28

1

1    A complaint, or portion thereof, should only be dismissed for failure to state a claim upon

2 which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in

3 support of the claim or claims that would entitle him to relief.  See Hishon v. King & Spalding, 467

4 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt

5 Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a complaint under this

6 standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg.

7 Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most

8 favorable to the plaintiff, and resolve all doubts in the plaintiff's favor.  Jenkins v. McKeithen, 395

9 U.S. 411, 421 (1969).

10    B.    Plaintiff's Claims

11    The events at issue in the instant action allegedly occurred at California State Prison-

12 Corcoran, where plaintiff is presently incarcerated.  Plaintiff names Warden Allen K . Scribner,

13 Chief Deputy Warden Lonnie A. Watson, Associate Warden David D. Ortiz, Facility Captain R. R.

14 Lowden, Facility Lieutenant D. J. Ruiz, Correctional Sergeant J. M. Martinez, Correctional Officers

15 German and Northcutt, and Does 1-14 as defendants.  Plaintiff is seeking money damages and

16 injunctive relief.

17    In his complaint, plaintiff alleges that he was transferred from the California Correctional

18 Institution in Tehachapi to CSP-Corcoran on January 24, 2005, and placed in the HCH Suicidal Unit

19 until January 26, 2005.  On January 26, 2005, defendants Scribner, Watson, Ortiz, and Lowden were

20 responsible for the issuance and circulation to staff of a memorandum which plaintiff alleges

21 contained incorrect information about him and led to the creation of an atmosphere of retaliation and

22 use of excessive force.

23    On January 26, 2005, defendants Martinez, German, Northcutt, and Does 1 and 2 arrived to

24 escort plaintiff from the HCH Suicidal Unit to the Security Housing Unit.  Plaintiff alleges that

25 during the escort defendants used excessive physical force against him, including throwing him

26 against the wall, smashing his face into the wall, stepping down on the chain between plaintiff's legs

27 leaving still-visible scars, twisting plaintiff's wrist and fingers upward and pulling them in different

28 directions, and punching plaintiff in the ribs and stomach while he was pinned to the wall.  After

plaintiff was taken to his cell and was down on his knees, he was punched right eye.  Plaintiff alleges that he was not a threat at any time during these events.  Plaintiff alleges that defendant Martinez told him that his past actions would not be tolerated in this unit and plaintiff's arms were then pulled through the tray slot beyond what they could comfortably extend.  Plaintiff alleges that as a result of the physical force, he suffered injuries, pain, and nerve damage.  Plaintiff alleges the scars are still visible and twenty-four hours afterward, he began to lose sight in his right eye and began to lose feeling in his wrists, left thumb, left index finger, right thumb, right index finger, and right pinky.

Plaintiff alleges that the next day, on January 27, 2005, he began calling "man down" and "emergency" in order to obtain medical assistance.  Defendant Martinez came to his cell and then left after asking, "Jacobs from Tehachapi, right?"  (Doc. 1, Comp., 11:19-20.)

Plaintiff alleges that Does 3 and 4 passed by his cell and failed to help plaintiff gain medical attention for his injuries.  Doe 5 examined plaintiff for a psychiatric evaluation on January 28, 2005, at which time plaintiff was taken to the HCH Suicidal Ward to receive medical attention and have his injuries documents.  Plaintiff alleges that Doe 6 completed the medical form but did not provide plaintiff with any treatment for his injuries, which were visible.  Plaintiff alleges that he remained there from January 28, 2005, through February 3, 2005, without any treatment for his injuries, despite coming into contact with Does 7-10 on a daily basis.

Plaintiff alleges that on February 2, 2005, he was seen briefly by the facility eye doctor, who determined plaintiff's condition to be an emergency.  Plaintiff was taken to the University Medical Center in Fresno for blindness on February 2, 2005, and taken to a specialty medical clinic for eye problems on February 3, 2005.  On February 3, 2005, plaintiff was released back to the SHU without further medical treatment for his eye and other injuries.

Plaintiff alleges that on February 8, 2005, he appeared before the Institutional Classification Committee, with his injuries obvious, and complained about the use of excessive force.  Defendant Ruiz responded to the committee room with a video camera and interviewed plaintiff concerning the incident of force.  Defendant Ruiz conducted a second interview with plaintiff on February 9, 2005.

///

///

3

On February 19, 2005, plaintiff was escorted to the visiting room by Does 11-13.  Plaintiff alleges that Doe 14, who joined the escort team, harassed him and abused him by twisting the chain attached to his handcuffs, insulted him, and made verbal threats against him.

Plaintiff that alleges between January 26, 2005, and February 8, 2005, he was denied bare essentials.  Plaintiff was placed on a management cell for sixteen days without a mattress, blankets, sheets, a towel, soap, toilet paper, toothpaste, toothbrush, writing material, mail, showers, food, and clothing.  Plaintiff alleges that he was forced to wear the same paper jumpsuit without undergarments for sixteen days, his toilet water was shut off during the night, and his food trays were placed on the floor in front of his cell where flies and cockroaches crawled into it.

### 1.    Claim Arising From Issuance of Memorandum

The memorandum which plaintiff claims violated his federal rights was issued on January 26, 2005.  (Comp., pg. 26.)  It sets forth that plaintiff attacked and stabbed a correctional officer at Tehachapi, that plaintiff has a history of such incidents, and that plaintiff hides, pretends to be unconscious, and slips his handcuffs to the front.  (Id.)  The memorandum then sets forth the procedures for rendering services to plaintiff.  (Id.)

Plaintiff's allegation that the memorandum violated his federal rights is without merit.  Defendants have every right to internally document information and set forth guidelines for dealing with plaintiff.  The memo was issued to staff to notify them of the applicable procedures.  Regardless of whether or not plaintiff agrees with the characterization of his actions in the memo, the issuance of the memo does not violate plaintiff's rights.  The allegation that the memo somehow created an atmosphere that led to the violation of plaintiff's is utterly unsupported.  The court has reviewed the memo and its contents simply do not impinge on any of plaintiff's federally protected rights.

### 2.    Excessive Force Claim

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ."  Hudson v. McMillian, 503 U.S. 1, 8 (1992).  "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency."  Id. (internal quotation marks and citations omitted).  The malicious and sadistic use of force to cause harm always violates

contemporary standards of decency, regardless of whether or not significant injury is evident.  Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)).  However, not "every malevolent touch by a prison guard gives rise to a federal cause of action."  Id. at 9.  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7.  "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."  Id.  (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it."  Id.

Plaintiff's allegations are sufficient to give rise to a claim for relief against defendants Martinez, German, Northcutt, and Does 1 and 2 based on the incident of January 26, 2005. However, plaintiff's allegation that Doe 14 yanked his handcuff chain on February 19, 2005, does not give rise to a claim for relief.  The allegation simply does not support a claim that defendant Doe 14 acted sadistically and maliciously toward plaintiff.[1]

3.    Denial of Medical Care

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain."  Rhodes v. Chapman, 452

---

[1] Verbal harassment or abuse alone is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983, Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987), and threats do not rise to the level of a constitutional violation.  Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987). Therefore, plaintiff's allegations that Doe 14 also insulted and harassed him do not support a claim for relief.

1  U.S. 337, 347 (1981).  A prisoner's claim of inadequate medical care does not rise to the level of an

2  Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal

3  civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate

4  indifference in doing so.'"  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett

5  v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  A prison official does not act in

6  a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to

7  inmate health or safety."  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Deliberate indifference may

8  be manifested "when prison officials deny, delay or intentionally interfere with medical treatment,"

9  or in the manner "in which prison physicians provide medical care."  McGuckin v. Smith, 974 F.2d

10  1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133,

11  1136 (9th Cir. 1997) (en banc).  Where a prisoner is alleging a delay in receiving medical treatment,

12  the delay must have led to further harm in order for the prisoner to make a claim of deliberate

13  indifference to serious medical needs.  McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd.

14  of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

15        Plaintiff's allegations that his injuries were visible and that defendants were aware of his

16  need for medical care but failed to assist him are sufficient to give rise to a claim for relief under

17  section 1983 against defendants Martinez and Does 3, 4, and 6-10.  However, plaintiff's allegations

18  do not support a claim that defendant Doe 5 acted with deliberate indifference to his medical needs,

19  as plaintiff's allegations establish that after he was interviewed by Doe 5, he was taken to the HCH

20  Suicidal Unit for care.

21                4.   Condition of Management Cell

22        Although prison conditions may be restrictive and harsh, prison officials must provide

23  prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  Id.; Toussaint

24  v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir.

25  1982).  Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison

26  officials may be held liable only if they acted with "deliberate indifference to a substantial risk of

27  serious harm."  Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

28  ///

1    The deliberate indifference standard involves an objective and a subjective prong.  First, the

2 alleged deprivation must be, in objective terms, "sufficiently serious . . . ."  <u>Farmer v. Brennan</u>, 511

3 U.S. 825, 834 (1994) (citing <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991)).  Second, the prison official

4 must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ."  <u>Farmer</u>, 511 U.S.

5 at 837.  Thus, a prison official may be held liable under the Eighth Amendment for denying humane

6 conditions of confinement only if he knows that inmates face a substantial risk of harm and

7 disregards that risk by failing to take reasonable measures to abate it.  <u>Id</u>. at 837-45.

8    With the exception of the deprivation of mail, writing material, and water flow to the toilet

9 at night for sixteen days, which are not conditions that rise to the level of Eighth Amendment

10 violations, plaintiff adequately alleges conditions sufficient to support an Eighth Amendment claim

11 with respect to the management cell he was placed in for sixteen days.  However, plaintiff has not

12 alleged any facts linking one or more of the named defendants to the conditions complained of.  For

13 this reason, plaintiff fails to state a claim based on the conditions he was subjected to while housed

14 in the management cell.

15        5.    Retaliation

16    Plaintiff alleges that the actions taken against him were retaliatory in nature.  Allegations of

17 retaliation against a prisoner's First Amendment rights to speech or to petition the government may

18 support a section 1983 claim.  <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir. 1985); <u>see also</u>

19 <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135 (9th Cir. 1989); <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th

20 Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five

21 basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2)

22 because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise

23 of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

24 correctional goal."  <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005).

25    Plaintiff's complaint is devoid of facts supporting a claim that any named defendant took

26 adverse action against him because of his engagement in activity protected under the First

27 Amendment.  To the extent that plaintiff's claim is premised on retaliatory acts taken against him

28 ///

for allegedly stabbing a correctional officer, this is not a protected activity and provides no basis for

the imposition of liability for retaliation in violation of the First Amendment.

6.    Conspiracy

Plaintiff alleges that defendants conspired to violate his rights.  In the context of conspiracy

claims brought pursuant to section 1983, such a complaint must "allege [some] facts to support the

existence of a conspiracy among the defendants." Buckey v. County of Los Angeles, 968 F.2d 791,

794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 626 (9th Cir.

1988).  Plaintiff must allege that defendants conspired or acted jointly in concert and that some overt

act was done in furtherance of the conspiracy.  Sykes v. State of California, 497 F.2d 197, 200 (9th

Cir. 1974).

Plaintiff has not alleged any facts supporting the existence of a conspiracy between

defendants to violate his rights.

7.    Defendants Ruiz and Does 11-13

The Civil Rights Act under which this action was filed provides:

Every person who, under color of [state law] . . . subjects, or causes
to be subjected, any citizen of the United States . . . to the deprivation
of any rights, privileges, or immunities secured by the Constitution .
. . shall be liable to the party injured in an action at law, suit in equity,
or other proper proceeding for redress.

42 U.S.C. § 1983.  "Section 1983 . . .  creates a cause of action for violations of the federal

Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997)

(internal quotations omitted.)  "To the extent that the violation of a state law amounts to the

deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution,

Section 1983 offers no redress." Id.

Section 1983 plainly requires that there be an actual connection or link between the actions

of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v.

Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "'A

person 'subjects' another to the deprivation of a constitutional right, within the meaning of [§] 1983,

if [that person] does an affirmative act, participates in another's affirmative acts or omits to perform

an act which [that person] is legally required to do that causes the deprivation of which complaint

8

1  is made.'"  Hydrick v. Hunter, 466 F.3d 676, 689 (9th Cir. 2006) (quoting Johnson v. Duffy, 588

2  F.2d 740, 743 (9th Cir. 1978)).  "[T]he 'requisite causal connection can be established not only by

3  some kind of direct, personal participation in the deprivation, but also be setting in motion a series

4  of acts by others which the actor knows or reasonably should know would cause others to inflict the

5  constitutional injury.'"  Id. (quoting Johnson at 743-44).

6          Plaintiff has not alleged any facts linking defendant Ruiz or defendants Does 11-13 to any

7  act or omission that demonstrates a violation of plaintiff's rights under federal law.  Accordingly,

8  plaintiff fails to state a claim for relief against any of these defendants.

9                          8.    State Law Claims

10         Plaintiff also alleges claims for assault and battery, and intentional infliction of emotional

11  distress under California law.  "An assault is an unlawful attempt, coupled with a present ability, to

12  commit a violent injury on the person of another" and "[a] battery is any willful and unlawful use

13  of force or violence upon the person of another."  Cal. Penal Code § 240, 242 (West 2006); 5 B. E.

14  Witkin, Summary of California Law, Torts § 346 (9th ed. 1988).

15         The elements of intentional infliction of emotional distress are: (1) extreme and outrageous

16  conduct by the defendant with the intention of causing, or reckless disregard of the probability of

17  causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and

18  (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct.

19  Sabow v. United States, 93 F.3d 1445, 1454 (9th Cir. 1996) (citing to Christensen v. Superior Court,

20  54 Cal.3d 868 (1991)) (quotations omitted).

21         Plaintiff's allegations are sufficient to give rise to state law tort claims for assault and battery

22  and intentional infliction of emotional distress against defendants Martinez, German, Northcutt, and

23  Does 1 and 2  arising from the incident of excessive force on January 26, 2005.  However, plaintiff's

24  allegations are not sufficient to give rise to tort claims against any other defendants.

25         C.    Conclusion

26         The court finds that plaintiff's complaint states cognizable claims for relief against

27  defendants Martinez, German, Northcutt, and Does 1 and 2 for use of excessive physical force,

28  assault and battery, and intentional infliction of emotional distress, and against defendants Martinez

and Does 3, 4, and 6-10 for acting with deliberate indifference to plaintiff's serious medical needs. However, the court finds that plaintiff's complaint does not state any other claims upon which relief may be granted.  The court will provide plaintiff with the opportunity to file an amended complaint, if plaintiff wishes to do so.

If plaintiff does not wish to file an amended complaint and is agreeable to proceeding only against defendants Martinez, German, Northcutt, and Does 1-4 and 6-10, plaintiff may so notify the court in writing.  The court will then issue Findings and Recommendations recommending that the remaining claims and defendants be dismissed from this action, and will forward plaintiff three summonses and three USM-285 forms to fill out and return to the court.  Upon receipt of these documents, the court will direct the United States Marshal to initiate service of process on defendants Martinez, German, and Northcutt.[2]

In the event that plaintiff does wish to amend his complaint, plaintiff is advised Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading.  As a  general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

---

[2] The Marshal cannot initiate service on unknown defendants.  Plaintiff will need to seek leave to amend to substitute the true names of the Doe defendants once he learns who they are.  See Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999); Merritt v. Los Angeles, 875 F.2d 765, 768 (9th Cir. 1989); see Swartz v. Gold Dust Casino, Inc., 91 F.R.D. 543, 547 (D. Nev. 1981).

Based on the foregoing, it is HEREBY ORDERED that:

1.      The Clerk's Office shall send plaintiff a civil rights complaint form;

2.      Within **thirty (30) days** from the date of service of this order, plaintiff must either:

        a.      File an amended complaint curing the deficiencies identified by the court in this order, or

        b.      Notify the court in writing that he does not wish to file an amended complaint and wishes to proceed only against defendants Martinez, German, Northcutt, and Does 1-4 and 6-10 on his cognizable excessive force, denial of medical care, and tort claims; and

3.      If plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.


IT IS SO ORDERED.

**Dated:      March 9, 2007                    /s/ Dennis L. Beck**
3b142a                                         UNITED STATES MAGISTRATE JUDGE

11