# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE E. JACOBS IV, | CASE NO. 1:06-cv-01280-AWI-NEW (DLB) PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS |
| v. | |
| ALLEN K. SCRIBNER, et al., | (Doc. 1) |
| Defendants. | |

I. Findings and Recommendations Following Screening of Complaint

  A. Procedural History

Plaintiff George E. Jacobs IV ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983 and California tort law. Plaintiff filed this action on September 18, 2006. (Doc. 1.) On March 12, 2007, the court issued an order finding that plaintiff's complaint stated cognizable claims for relief against defendants Martinez, German, Northcutt, and Does 1 and 2 for use of excessive physical force, assault and battery, and intentional infliction of emotional distress, and against defendants Martinez and Does 3, 4, and 6-10 for acting with deliberate indifference to plaintiff's serious medical needs. (Doc. 9.) However, the court found that plaintiff's complaint did not state any other claims upon which relief may be granted. (Id.) The court ordered plaintiff to either file an amended complaint or notify the court of his willingness to proceed only on the claims found to be cognizable by the court. (Id.) On March 22, 2007, plaintiff notified the court that he does not wish to amend and wishes to proceed only on

1

his cognizable claims. (Doc. 10.) Based on plaintiff's notice, this Findings and Recommendations now issues.

B.  Screening Requirement

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

C.  Plaintiff's Claims

The events at issue in the instant action allegedly occurred at California State Prison-Corcoran, where plaintiff is presently incarcerated. Plaintiff names Warden Allen K. Scribner, Chief Deputy Warden Lonnie A. Watson, Associate Warden David D. Ortiz, Facility Captain R. R. Lowden, Facility Lieutenant D. J. Ruiz, Correctional Sergeant J. M. Martinez, Correctional Officers German and Northcutt, and Does 1-14 as defendants. Plaintiff is seeking money damages and injunctive relief.

In his complaint, plaintiff alleges that he was transferred from the California Correctional

Case 1:06-cv-01280-AWI-EPG   Document 11   Filed 03/28/07   Page 3 of 11

Institution in Tehachapi to CSP-Corcoran on January 24, 2005, and placed in the HCH Suicidal Unit until January 26, 2005. On January 26, 2005, defendants Scribner, Watson, Ortiz, and Lowden were responsible for the issuance and circulation to staff of a memorandum which plaintiff alleges contained incorrect information about him and led to the creation of an atmosphere of retaliation and use of excessive force.

On January 26, 2005, defendants Martinez, German, Northcutt, and Does 1 and 2 arrived to escort plaintiff from the HCH Suicidal Unit to the Security Housing Unit. Plaintiff alleges that during the escort defendants used excessive physical force against him, including throwing him against the wall, smashing his face into the wall, stepping down on the chain between plaintiff's legs leaving still-visible scars, twisting plaintiff's wrist and fingers upward and pulling them in different directions, and punching plaintiff in the ribs and stomach while he was pinned to the wall. After plaintiff was taken to his cell and was down on his knees, he was punched right eye. Plaintiff alleges that he was not a threat at any time during these events. Plaintiff alleges that defendant Martinez told him that his past actions would not be tolerated in this unit and plaintiff's arms were then pulled through the tray slot beyond what they could comfortably extend. Plaintiff alleges that as a result of the physical force, he suffered injuries, pain, and nerve damage. Plaintiff alleges the scars are still visible and twenty-four hours afterward, he began to lose sight in his right eye and began to lose feeling in his wrists, left thumb, left index finger, right thumb, right index finger, and right pinky.

Plaintiff alleges that the next day, on January 27, 2005, he began calling "man down" and "emergency" in order to obtain medical assistance. Defendant Martinez came to his cell and then left after asking, "Jacobs from Tehachapi, right?" (Doc. 1, Comp., 11:19-20.)

Plaintiff alleges that Does 3 and 4 passed by his cell and failed to help plaintiff gain medical attention for his injuries. Doe 5 examined plaintiff for a psychiatric evaluation on January 28, 2005, at which time plaintiff was taken to the HCH Suicidal Ward to receive medical attention and have his injuries documents. Plaintiff alleges that Doe 6 completed the medical form but did not provide plaintiff with any treatment for his injuries, which were visible. Plaintiff alleges that he remained there from January 28, 2005, through February 3, 2005, without any treatment for his injuries, despite coming into contact with Does 7-10 on a daily basis.

3

Plaintiff alleges that on February 2, 2005, he was seen briefly by the facility eye doctor, who determined plaintiff's condition to be an emergency. Plaintiff was taken to the University Medical Center in Fresno for blindness on February 2, 2005, and taken to a specialty medical clinic for eye problems on February 3, 2005. On February 3, 2005, plaintiff was released back to the SHU without further medical treatment for his eye and other injuries.

Plaintiff alleges that on February 8, 2005, he appeared before the Institutional Classification Committee, with his injuries obvious, and complained about the use of excessive force. Defendant Ruiz responded to the committee room with a video camera and interviewed plaintiff concerning the incident of force. Defendant Ruiz conducted a second interview with plaintiff on February 9, 2005.

On February 19, 2005, plaintiff was escorted to the visiting room by Does 11-13. Plaintiff alleges that Doe 14, who joined the escort team, harassed him and abused him by twisting the chain attached to his handcuffs, insulted him, and made verbal threats against him.

Plaintiff that alleges between January 26, 2005, and February 8, 2005, he was denied bare essentials. Plaintiff was placed on a management cell for sixteen days without a mattress, blankets, sheets, a towel, soap, toilet paper, toothpaste, toothbrush, writing material, mail, showers, food, and clothing. Plaintiff alleges that he was forced to wear the same paper jumpsuit without undergarments for sixteen days, his toilet water was shut off during the night, and his food trays were placed on the floor in front of his cell where flies and cockroaches crawled into it.

    1. <u>Claim Arising From Issuance of Memorandum</u>

The memorandum which plaintiff claims violated his federal rights was issued on January 26, 2005. (Comp., pg. 26.) It sets forth that plaintiff attacked and stabbed a correctional officer at Tehachapi, that plaintiff has a history of such incidents, and that plaintiff hides, pretends to be unconscious, and slips his handcuffs to the front. (Id.) The memorandum then sets forth the procedures for rendering services to plaintiff. (Id.)

Plaintiff's allegation that the memorandum violated his federal rights is without merit. Defendants have every right to internally document information and set forth guidelines for dealing with plaintiff. The memo was issued to staff to notify them of the applicable procedures. Regardless of whether or not plaintiff agrees with the characterization of his actions in the memo, the issuance

of the memo does not violate plaintiff's rights. The allegation that the memo somehow created an atmosphere that led to the violation of plaintiff's is unsupported. The court has reviewed the memo and its contents simply do not impinge on any of plaintiff's federally protected rights.

### 2. Excessive Force Claim

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

Plaintiff's allegations are sufficient to give rise to a claim for relief against defendants Martinez, German, Northcutt, and Does 1 and 2 based on the incident of January 26, 2005.

However, plaintiff's allegation that Doe 14 yanked his handcuff chain on February 19, 2005, does not give rise to a claim for relief. The allegation simply does not support a claim that defendant Doe 14 acted sadistically and maliciously toward plaintiff.[1]

### 3. Denial of Medical Care

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

Plaintiff's allegations that his injuries were visible and that defendants were aware of his need for medical care but failed to assist him are sufficient to give rise to a claim for relief under section 1983 against defendants Martinez and Does 3, 4, and 6-10. However, plaintiff's allegations do not support a claim that defendant Doe 5 acted with deliberate indifference to his medical needs, as plaintiff's allegations establish that after he was interviewed by Doe 5, he was taken to the HCH

---

[1] Verbal harassment or abuse alone is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983, Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987), and threats do not rise to the level of a constitutional violation. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987). Therefore, plaintiff's allegations that Doe 14 also insulted and harassed him do not support a claim for relief.

6

Suicidal Unit for care.

### 4. Condition of Management Cell

Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45.

With the exception of the deprivation of mail, writing material, and water flow to the toilet at night for sixteen days, which are not conditions that rise to the level of Eighth Amendment violations, plaintiff adequately alleges conditions sufficient to support an Eighth Amendment claim with respect to the management cell he was placed in for sixteen days. However, plaintiff has not alleged any facts linking one or more of the named defendants to the conditions complained of. For this reason, plaintiff fails to state a claim based on the conditions he was subjected to while housed in the management cell.

### 5. Retaliation

Plaintiff alleges that the actions taken against him were retaliatory in nature. Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five

basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff's complaint is devoid of facts supporting a claim that any named defendant took adverse action against him because of his engagement in activity protected under the First Amendment. To the extent that plaintiff's claim is premised on retaliatory acts taken against him for allegedly stabbing a correctional officer, this is not a protected activity and provides no basis for the imposition of liability for retaliation in violation of the First Amendment.

### 6. Conspiracy

Plaintiff alleges that defendants conspired to violate his rights. In the context of conspiracy claims brought pursuant to section 1983, such a complaint must "allege [some] facts to support the existence of a conspiracy among the defendants." Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 626 (9th Cir. 1988). Plaintiff must allege that defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy. Sykes v. State of California, 497 F.2d 197, 200 (9th Cir. 1974).

Plaintiff has not alleged any facts supporting the existence of a conspiracy between defendants to violate his rights.

### 7. Defendants Ruiz and Does 11-13

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted.) "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution,

1  Section 1983 offers no redress." Id.

2  Section 1983 plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "'A person 'subjects' another to the deprivation of a constitutional right, within the meaning of [§] 1983, if [that person] does an affirmative act, participates in another's affirmative acts or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" Hydrick v. Hunter, 466 F.3d 676, 689 (9th Cir. 2006) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "[T]he 'requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also be setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. (quoting Johnson at 743-44).

Plaintiff has not alleged any facts linking defendant Ruiz or defendants Does 11-13 to any act or omission that demonstrates a violation of plaintiff's rights under federal law. Accordingly, plaintiff fails to state a claim for relief against any of these defendants.

        8.     State Law Claims

Plaintiff also alleges claims for assault and battery, and intentional infliction of emotional distress under California law. "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another" and "[a] battery is any willful and unlawful use of force or violence upon the person of another." Cal. Penal Code § 240, 242 (West 2006); 5 B. E. Witkin, Summary of California Law, Torts § 346 (9th ed. 1988).

The elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct. Sabow v. United States, 93 F.3d 1445, 1454 (9th Cir. 1996) (citing to Christensen v. Superior Court, 54 Cal.3d 868 (1991)) (quotations omitted).

Plaintiff's allegations are sufficient to give rise to state law tort claims for assault and battery

9

and intentional infliction of emotional distress against defendants Martinez, German, Northcutt, and Does 1 and 2 arising from the incident of excessive force on January 26, 2005. However, plaintiff's allegations are not sufficient to give rise to tort claims against any other defendants.

### D. Conclusion

Plaintiff's complaint states cognizable claims for relief against defendants Martinez, German, Northcutt, and Does 1 and 2 for use of excessive physical force, assault and battery, and intentional infliction of emotional distress, and against defendants Martinez and Does 3, 4, and 6-10 for acting with deliberate indifference to plaintiff's serious medical needs. However, plaintiff's complaint does not state any other claims upon which relief may be granted. Plaintiff was provided with the opportunity to file an amended complaint, but opted to proceed on the claims found to be cognizable by the court. Accordingly, it is HEREBY RECOMMENDED that:

1. This action proceed on plaintiff's original complaint, filed September 18, 2006, against defendants Martinez, German, Northcutt, and Does 1 and 2 for use of excessive physical force, assault and battery, and intentional infliction of emotional distress; and against defendants Martinez and Does 3, 4, and 6-10 for acting with deliberate indifference to plaintiff's serious medical needs;

2. Plaintiff's claim arising from the issuance of the memorandum on January 26, 2005, be dismissed, with prejudice, for failure to state a claim upon which relief may be granted;

3. Plaintiff's excessive force claim against defendant Doe 14, based on the yanking of his handcuff chain on February 19, 2005, be dismissed, with prejudice, for failure to state a claim upon which relief may be granted;

4. Plaintiff's medical care claim against defendant Doe 5, be dismissed, with prejudice, for failure to state a claim upon which relief may be granted;

5. Plaintiff's claim arising from the conditions of the management cell, be dismissed, with prejudice, for failure to state a claim upon which relief may be granted;

6. Plaintiff's retaliation claim be dismissed, with prejudice, for failure to state a claim upon which relief may be granted;

7. Plaintiff's conspiracy claim be dismissed, with prejudice, for failure to state a claim upon which relief may be granted;

8. Plaintiff's state law tort claims, other than his claims for assault and battery and intentional infliction of emotional distress against defendants Martinez, German, Northcutt, and Does 1 and 2 arising from the incident of excessive force on January 26, 2005, be dismissed, with prejudice, for failure to state a claim upon which relief may be granted; and

9. Defendants Scribner, Watson, Ortiz, Lowden, Ruiz, and Does 5 and 11-14 be dismissed from this action based on plaintiff's failure to state any claims upon which relief may be granted against them.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **March 27, 2007**      /s/ **Dennis L. Beck**
3b142a                             UNITED STATES MAGISTRATE JUDGE