# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

GEORGE E. JACOBS, IV,

              Plaintiff,

   v.

ALLEN K. SCRIBNER, et al.,

              Defendants.

_____/

CASE NO. 1:06-cv-01280-AWI-GSA PC

FINDINGS AND RECOMMENDATIONS
RECOMMENDING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT BE
GRANTED

(Doc. 82)

Plaintiff, George E. Jacobs, IV, ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983 and California tort law.

## A.  RELEVANT PROCEDURAL HISTORY

Plaintiff filed this action on September 18, 2006. (Doc. 1.) On March 12, 2007, the Court issued an order finding that Plaintiff's Complaint stated cognizable claims for relief against Defendants Martinez, German, Northcutt, and Does 1 and 2 for use of excessive physical force, intentional infliction of emotional distress, and assault and battery; and against Defendants Martinez and Does 3, 4, and 6-10 for acting with deliberate indifference to Plaintiff's serious medical needs. (Doc. 9.) However, the Court found that Plaintiff's Complaint did not state any other claims upon which relief may be granted. (Id.) The Court ordered Plaintiff to either file an amended complaint or notify the Court of his willingness to proceed only on the claims found cognizable by the Court. (Id.) On March 22, 2007, Plaintiff notified the Court that he did not wish to amend and wished to proceed only on his cognizable claims. (Doc. 10.) Findings and Recommendations based on Plaintiff's response issued and were adopted. (Docs. 11, 17.)

1

1    On March 27, 2009, Defendants filed a motion for partial summary judgment.  (Doc. 82.)

2   On April 15, 2009, Plaintiff filed an opposition.  (Doc. 83.)  Defendants filed their reply on April

3   20, 2009.  (Doc. 84.)[1]

4   **B.  SUMMARY JUDGMENT STANDARD**

5    Summary judgment is appropriate when it is demonstrated that there exists no genuine

6   issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

7   Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

8    always bears the initial responsibility of informing the district court
9    of the basis for its motion, and identifying those portions of "the
     pleadings, depositions, answers to interrogatories, and admissions
     on file, together with the affidavits, if any," which it believes
10   demonstrate the absence of a genuine issue of material fact.

11   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

12   burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be

13   made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions

14   on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery

15   and upon motion, against a party who fails to make a showing sufficient to establish the existence

16   of an element essential to that party's case, and on which that party will bear the burden of proof

17   at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the

18   nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

19   circumstance, summary judgment should be granted, "so long as whatever is before the district

20   court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

21   satisfied."  Id. at 323.

22    If the moving party meets its initial responsibility, the burden then shifts to the opposing

23   party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

24   ───────────────

25   [1] Plaintiff was provided with notice of the requirements for opposing and replying to a motion for summary
     judgment by the Court in an order filed on May 21, 2007.  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).
26   (Doc. 16.)  While Plaintiff filed an opposition, he failed to file a disputed statement of facts.  However, Plaintiff did
     file a declaration and exhibits in opposition to the Defendants' motion for summary judgment.  Further, since the
27   Complaint is verified, it constitutes an opposing affidavit for purposes of the summary judgment rule, where it is
     based on Plaintiff's personal knowledge of admissible evidence, and not merely belief.  McElyea v. Babbitt, 833
     F.2d 196, 197-98 (9th Cir. 1987) (per curium); Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985);
28   F.R.C.P. 56(e).

1   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

2       In attempting to establish the existence of this factual dispute, the opposing party may not

3   rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the

4   form of affidavits, and/or admissible discovery material, in support of its contention that the

5   dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must

6   demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

7   suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W.

8   Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that

9   the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

10  the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

11      In the endeavor to establish the existence of a factual dispute, the opposing party need not

12  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

13  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

14  trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

15  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

16  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

17  amendments).

18      In resolving the Motion for Summary Judgment, the Court examines the pleadings,

19  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

20  any.  Rule 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at

21  255, and all reasonable inferences that may be drawn from the facts placed before the court must

22  be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v.

23  Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam).  Nevertheless, inferences are not drawn out

24  of the air, and it is the opposing party's obligation to produce a factual predicate from which the

25  inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D.

26  Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

27      Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

28  show that there is some metaphysical doubt as to the material facts.  Where the record taken as a

1   whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

2   issue for trial.'"  Matsushita, 475 U.S. at 587 (*citation omitted*).

3   **C. ANALYSIS**

4       **1. Summary of Complaint**

5       The events at issue in the instant action allegedly occurred at California State Prison-

6   Corcoran, where Plaintiff is presently incarcerated.  Plaintiff named Warden Allen K. Scribner,

7   Chief Deputy Warden Lonnie A. Watson, Associate Warden David D. Ortiz, Facility Captain R.

8   R. Lowden, Facility Lieutenant D. J. Ruiz, Correctional Sergeant J. M. Martinez, Correctional

9   Officers German and Northcutt, and Does 1-14 as Defendants.

10      In his Complaint, Plaintiff alleges that he was transferred from the California Correctional

11  Institution in Tehachapi to CSP-Corcoran on January 24, 2005 and was placed in the HCH

12  Suicidal Unit until January 26, 2005.  On January 26, 2005, Defendants Scribner, Watson, Ortiz,

13  and Lowden were responsible for the issuance and circulation to staff of a memorandum which

14  Plaintiff alleges contained incorrect information about him and led to the creation of an

15  atmosphere of retaliation and use of excessive force.

16      On January 26, 2005, Defendants Martinez, German, Northcutt, and Does 1 and 2 arrived

17  to escort Plaintiff from the HCH Suicidal Unit to the Security Housing Unit.  Plaintiff alleges

18  that during the escort these Defendants used excessive physical force against him, including

19  throwing him against the wall, smashing his face into the wall, stepping down on the chain

20  between Plaintiff's legs leaving still-visible scars, twisting Plaintiff's wrist and fingers upward

21  and pulling them in different directions, and punching Plaintiff in the ribs and stomach while he

22  was pinned to the wall.  After Plaintiff was taken to his cell and was down on his knees, he was

23  punched in his right eye.  Plaintiff alleges that he was not a threat at any time during these events.

24  Plaintiff alleges that Defendant Martinez told him that his past actions would not be tolerated in

25  this unit and Plaintiff's arms were then pulled through the tray slot beyond what they could

26  comfortably extend.  Plaintiff alleges that as a result of the physical force, he suffered injuries,

27  pain, and nerve damage.  Plaintiff alleges the scars are still visible and twenty-four hours

28  afterward, he began to lose sight in his right eye and began to lose feeling in his wrists, left

4

1  thumb, left index finger, right thumb, right index finger, and right pinky.

2       Plaintiff alleges that the next day, January 27, 2005, he began calling "man down" and

3  "emergency" in order to obtain medical assistance.  Defendant Martinez came to his cell and then

4  left after asking, "Jacobs from Tehachapi, right?"  (Doc. 1, Comp., 11:19-20.)

5       Plaintiff alleges that Does 3 and 4 passed by his cell and failed to help Plaintiff obtain

6  medical attention for his injuries.  Doe 5 examined Plaintiff for a psychiatric evaluation on

7  January 28, 2005, at which time Plaintiff was taken to the HCH Suicidal Ward to receive medical

8  attention and have his injuries documented.  Plaintiff alleges that Doe 6 completed the medical

9  form but did not provide Plaintiff with any treatment for his visible injuries.  Plaintiff alleges that

10 he remained there from January 28, 2005, through February 3, 2005, without any treatment for

11 his injuries, despite coming into contact with Does 7-10 on a daily basis.

12      Plaintiff alleges that on February 2, 2005, he was seen briefly by the facility eye doctor,

13 who determined his condition constituted an emergency.  Plaintiff was taken to the University

14 Medical Center in Fresno for blindness on February 2, 2005, and taken to a specialty medical

15 clinic for eye problems on February 3, 2005.  On February 3, 2005, Plaintiff was released back to

16 the SHU without further medical treatment for his eye and other injuries.

17      Plaintiff alleges that on February 8, 2005, he appeared with obvious injuries before the

18 Institutional Classification Committee and complained about the use of excessive force.

19 Defendant Ruiz responded to the committee room with a video camera and interviewed Plaintiff

20 concerning the incident.  Defendant Ruiz conducted a second interview with Plaintiff on

21 February 9, 2005.

22      On February 19, 2005, Plaintiff was escorted to the visiting room by Does 11-13.

23 Plaintiff alleges that Doe 14, who joined the escort team, harassed him and abused him by

24 twisting the chain attached to his handcuffs, insulted him, and made verbal threats against him.

25      Plaintiff alleges that, between January 26, 2005 and February 8, 2005, he was denied bare

26 essentials when he was placed on management cell for sixteen days without a mattress, blankets,

27 sheets, a towel, soap, toilet paper, toothpaste, toothbrush, writing material, mail, showers, food,

28 and clothing.  Plaintiff alleges that he was forced to wear the same paper jumpsuit without

1  undergarments for sixteen days, his toilet water was shut off during the night, and his food trays

2  were placed on the floor in front of his cell where flies and cockroaches crawled on it.

3      On March 12, 2007, the Court issued an order finding that Plaintiff's Complaint stated

4  cognizable claims for relief against Defendants Martinez, German, Northcutt, and Does 1 and 2

5  for use of excessive physical force in violation of the Eight Amendment to the United States

6  Constitution, and for intentional infliction of emotional distress and assault and battery under

7  California law; and against Defendants Martinez and Does 3, 4, and 6-10 for acting with

8  deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment

9  to the United States Constitution.  (Doc. 9, Screen Order; Doc. 11, F&R; Doc. 17, Order Adopt.)

10 All other Defendants and claims were dismissed.  (Id.)

11                    **2.  Defendants' Motion for Partial Summary Judgment**

12      Defendants Martinez, German, and Northcutt ("the moving Defendants") move under

13 Federal Rule of Civil Procedure 56 for partial summary judgment as to Plaintiff's state law

14 claims of intentional infliction of emotional distress and assault and battery.  (Doc. 82-2, Mot.

15 Sum. Jud., pp. 1-2.)  The moving Defendants argue that Plaintiff's state law claims are barred by

16 the Government Tort Claims Act.  (Id.)  The moving Defendants do not, in any way, address

17 and/or attack any of Plaintiff's claims under the Eighth Amendment to the United States

18 Constitution.

19                          **3.  Undisputed Facts**[2]

20 1.     Plaintiff submitted his claim for assault and battery, and intentional infliction of

21

22      [2]The following facts are undisputed for the purpose of this Motion.  Plaintiff neither admitted or denied the

23 facts set forth by Defendant as undisputed nor filed a separate statement of disputed facts.  Local Rule 56-260(b).
   Therefore, the Court compiled the statement of undisputed facts from Defendant's statement of undisputed facts and

24 Plaintiff's verified Complaint and opposition.  Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998)
   (verified complaints and oppositions constitute opposing affidavits for purposes of the summary judgment rule if

25 they are based on facts within the pleader's personal knowledge).  Because Plaintiff neither submitted his own
   statement of disputed facts nor addressed Defendant's statement of undisputed facts, the Court accepts Defendant's

26 version of the facts Plaintiff's verified complaint and opposition are not contradictory.

        Further, the Court reviewed Plaintiff's Complaint, Defendants' Motion for Partial Summary Judgment,

27 Plaintiff's documents filed in opposition thereto, and Defendants' Reply.  The Court declines to exhaustively list
   every argument, fact, and/or item of evidence submitted by the parties.  Omission in this findings and

28 recommendation of reference to various arguments, facts, and/or evidence should not be interpreted by the parties as
   an indication that the Court overlooked that argument, fact, or piece of evidence.

1    emotional distress under California law to the California Victim Compensation and

2    Government Claims Board on May 22, 2005;

3    2.    Plaintiff's claim was rejected by the Government Claims Board on August 24, 2005;

4    3.    The rejection notice contained the standard warning that Plaintiff had six months from the

5          date of the notice to file a court action on this claim; and

6    4.    The civil docket shows that this matter was commenced on September 18, 2006.

7                              **4.    <u>Discussion</u>**

8          The moving Defendants argue that Plaintiff's claims under California law are barred by

9    California's Tort Claims Act.  (Doc. 82-2, Memo. of P & A, pp. 2-3.)  The moving Defendants

10   argue that, since Plaintiff's claim was rejected by the Government Claims Board on August 24,

11   2005, his commencing the instant action approximately thirteen months later (on September 18,

12   2006) did not comply with the six month filing requirement and was untimely so as to bar his

13   state law claims.  (<u>Id.</u>)  California Government Code § 945.6 requires "any suit brought against a

14   public entity" be commenced no more than six months after the public entity rejects the claim.

15   Cal. Gov. Code, § 945.6(a)(1).

16         The Court finds that Defendants have met their initial burden of informing the court of

17   the basis for their motion, and identifying those portions of the record which they believe

18   demonstrate the absence of a genuine issue of material fact.  The burden therefore shifts to

19   Plaintiff to establish that a genuine issue as to any material fact actually does exist.  *See*

20   <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

21         Plaintiff does not dispute any of the facts presented as undisputed by the moving

22   Defendants.  Rather, Plaintiff makes various arguments attempting to show that his filing of this

23   action, some thirteen months after his claim was rejected by the Government Claims Board, was

24   timely.

25         Plaintiff cites California's Government Code § 945.6(a)(2) and asserts that it states that if

26   "the Board does not act on a claim e.g. rejects the claim(s), or a notice of the denial is not sent,

27   any state tort action must be filed within two years of the date of [sic] the cause of action

28   accrued."  (Doc. 83, Opp., 2:22-26.)  However, § 945.6(a)(2) actually states that an exception to

                                        7

1  the six month filing statute exists:

2      If written notice is not given in accordance with Section 913, within two
        years from the accrual of the cause of action.  If the period within which the
3      public entity is required to act is extended pursuant to subdivision (b) of
        Section 912.4, the period of such extension is not part of the time limited
4      for the commencement of the action under this paragraph.

5  Cal.Gov.Code § 945.6(a)(2).  Plaintiff's reliance on this subsection is misplaced – particularly

6  since he received and submitted a copy of the Government Claim Board's notice of rejection.[3]

7  Plaintiff does not, and by his own evidence cannot, argue that written notice of rejection of his

8  claim was not given.  Plaintiff does not present any evidence to show that he was not required to

9  comply with the six month commencement deadline set by California Government Code §

10  945.6(a)(1).

11      Plaintiff also argues that, as of January 1, 2003, California's Code of Civil Procedure §

12  335.1, allows him two years to file a suit on his claims.  (Doc. 83, Opp., pp. 2-3.)  However, suits

13  against a California public entity or public employees are governed by the specific statute of

14  limitations provided in the California Government Code, not the statute of limitations that

15  applies to private defendants.  Moore v. Twomey, 120 Cal.App.4th 910, 913-914 (Cal.App. 3

16  Dist., 2004) citing Martell v. Antelope Valley Hospital Medical Center 67 Cal.App.4th 978, 981

17  (1998).  California Government Code § 945.6 requires "any suit brought against a public entity"

18  be commenced no more than six months after the public entity rejects the claim.  Cal. Gov. Code,

19  § 945.6(a)(1).  A civil action is "commenced" by filing a complaint with the court.  Cal. Code

20  Civ. Proc., § 411.10.  Further, the statute of limitations for commencing a government tort claim

21  action was not tolled by virtue of Plaintiff's imprisonment.  Cal. Code Civ. Proc., § 352.1(b); see

22  also Twomey, 120 Cal.App.4th at 914.

23      Finally, Plaintiff argues (without citing any supporting legal authority) that, under the

24  pendent jurisdiction doctrine, his filing of this action was timely as "the venue rules that would

25  be applicable to a lawsuit that only contained federal civil rights law causes of actions" should

26  also be applied to his state law claims.  (Id. at p. 3.)  Plaintiff misunderstands this Court's

27

28      [3] See Exhibit A submitted in Plaintiff's opposition.  (Doc. 83, Opp., pp. 7-8.)

1    pendent/supplemental jurisdiction of state law claims.

2            Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original

3    jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the

4    action within such original jurisdiction that they form part of the same case or controversy under

5    Article III," except as provided in subsections (b) and (c).  "[O]nce judicial power exists under §

6    1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is

7    discretionary."  Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997).  "The district

8    court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . .

9    the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. §

10   1367(c)(3).  A district court may exercise supplemental/pendent jurisdiction over state law claims

11   so as to expeditiously resolve federal and state issues which are part of the same case or

12   controversy.  Exercising supplemental/pendent jurisdiction does not authorize the district court to

13   choose between state and federal statutes of limitation.  Further, Federal law determines when a

14   claim accrues, and "[u]nder federal law, a claim accrues when the plaintiff knows or has reason

15   to know of the injury which is the basis of the action."  Maldonado v. Harris, 370 F.3d 945, 955

16   (9th Cir. 2004); Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999).  Here, Plaintiff knew of the

17   alleged assault and battery and intentional infliction of emotional distress on the dates of

18   occurrence.  Because section 1983 contains no specific statute of limitation, federal courts should

19   apply the forum state's statute of limitations for personal injury actions.  Jones v. Blanas, 393

20   F.3d 918, 927 (2004); Maldonado, 370 F.3d at 954; Fink, 192 F.3d at 914.  California's statute of

21   limitations for personal injury actions was extended to two years effective January 1, 2003.  Cal.

22   Civ. Proc. Code § 335.1 (West 2007); Jones, 393 F.3d at 927; Maldonado, 370 F.3d at 954-55.

23   However, as discussed herein above, suits against a California public entity or public employees

24   are governed by the specific statute of limitations provided in the California Government Code,

25   not the statute of limitations that applies to private defendants.  Moore v. Twomey, 120

26   Cal.App.4th 910, 913-914 (Cal.App. 3 Dist., 2004) *citing* Martell v. Antelope Valley Hospital

27   Medical Center 67 Cal.App.4th 978, 981 (1998); and California Government Code § 945.6

28   requires "any suit brought against a public entity" be commenced no more than six months after

1    the public entity rejects the claim.  Cal. Gov. Code, § 945.6(a)(1).

2            Accordingly, in order to be timely, Plaintiff would have had to file the present action

3    within six months of the date his claim was rejected by the Government Claims Board – August

4    24, 2005.  Plaintiff filed this action on September 18, 2006 – over a year after his claims under

5    state law were rejected by the Government Claims Board.  Plaintiff's claims against Defendants

6    Martinez, German, and Northcutt for intentional infliction of emotional distress and assault and

7    battery under California law are barred by the California Tort Claims Act.  Plaintiff's verified

8    Complaint and declaration submitted in support of his opposition neither set forth evidence

9    raising a triable issue of fact concerning the date his claims were rejected by the Government

10   Claims Board and/or the date he filed this action, nor evidence to exclude him from the

11   requirement to commence an action on his state law claims within six months of the date of

12   notice of rejection of his claim(s) by the Government Claims Board as required b y California

13   Government Code § 945.6(a)(1).  Therefore, Defendants Martinez, German, and Northcutt are

14   entitled to summary judgment as a matter of law on Plaintiff's claims against them for intentional

15   infliction of emotional distress and assault and battery under California law.

16           **D.  CONCLUSION AND RECOMMENDATION**

17           For the reasons set forth herein, the Court finds that Defendants Martinez, German, and

18   Northcutt are entitled to summary judgment as a matter of law on Plaintiff's claims against them

19   for intentional infliction of emotional distress and assault and battery under California law.

20           Based on the foregoing, it is HEREBY RECOMMENDED that Defendants' Motion for

21   Partial Summary Judgment, filed March 27, 2009, be GRANTED.

22           These Findings and Recommendations will be submitted to the United States District

23   Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

24   **thirty (30) days** after being served with these Findings and Recommendations, the parties may

25   file written objections with the court.  The document should be captioned "Objections to

26   Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file

27   objections within the specified time may waive the right to appeal the District Court's order.

28   Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 11, 2009**               _____ **/s/ Gary S. Austin** _____
UNITED STATES MAGISTRATE JUDGE