UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE E. JACOBS IV, | Case No. 1:06 cv 01280 AWI GSA PC |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| C/O MARTINEZ , et al., | |
| Defendants | (ECF NO. 121) |
| | OBJECTIONS DUE IN THIRTY DAYS |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).   Pending before the Court is Defendants' motion for summary judgment.  Plaintiff has opposed the motion.[1]

I.     **Procedural History**

This action proceeds on the original complaint filed by Plaintiff on September 18, 2006. Plaintiff named   as Defendants the following individuals employed by the California Department of Corrections and Rehabilitation (CDCR) at CSP Corcoran: Warden Allen Scribner; Chief Deputy Warden Lonnie Watson; Associate Warden David Ortiz; Facility Captain

---

[1] On May 21, 2007, the Court issued and sent to Plaintiff the summary judgment notice required by Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988)  (ECF No. 16.)  The order was re-served on Plaintiff on July 10, 212, in response to the Ninth Circuit's decision in Woods v. Carey, 684 F.3d 934 (9th Cir. 2012)  (ECF No. 149).

R. Lowden; Facility Lieutenant D. J. Ruiz; Correctional Sergeant J. M. Martinez; Correctional Officers German and Northcutt; Does 1-14.   Plaintiff set forth several claims for relief.   On March 12, 2007, an order was entered, finding that the complaint stated a claim for relief against Defendants Martinez and Does 3,4, and 6-10 for acting with deliberate indifference to Plaintiff's serious medical needs.  (ECF No. 9).  The Court found that the complaint failed to state any other claims.  Id.  The Court ordered Plaintiff to either file an amended complaint or notify the Court of his willingness to proceed only on the claims found to be cognizable in the March 12, 2007, order.  Plaintiff notified the Court that he did not wish to amend and wished to proceed only on his cognizable claims.  On June 4, 2007, an order was entered by the District Court, adopting the findings and recommendations of the Magistrate Judge, dismissing certain claims and Defendants.[2] (ECF No. 17.)  The order specified that this action proceed on Plaintiff's original complaint against Defendants Martinez, German and Northcutt and Does 1 and 2 for use of excessive physical force, assault and battery, and intentional infliction of emotional distress. This action also proceeded against Defendants Martinez and Does 3, 4 and 6-10 for acting with deliberate indifference to Plaintiff's serious medical needs.  On July 25, 2007, Defendants Martinez and Northcutt filed an answer to the complaint.  (ECF No. 21.)  On September 25, 2007, Defendant German filed an answer to the complaint.  (ECF No. 27.)  On March 27, 2009, Defendants Martinez, Northcutt and German filed a motion for partial summary judgment.  (ECF No. 82.)  Plaintiff opposed the motion (ECF No. 83.)  On November 16, 2009, an order was

---

[2] The following claims and defendants were dismissed:  Plaintiff's claims arising from the issuance of the memorandum on January 26, 2005; Plaintiff's excessive force claim against Defendant Doe 14, based on the yanking of his handcuff chain on February 19, 2005; Plaintiff's medical care claim against Defendant Doe 5; Plaintiff's claim arising from the conditions of the management cell; Plaintiff's retaliation claim; Plaintiff's conspiracy claim; Plaintiff's state law tort claims, other than his claims for assault and battery and intentional infliction of emotional distress against Defendants Martinez, German, Northcutt, and Does 1 and 2 arising from the incident of excessive force on January 26, 2005.  All of the above claims were dismissed with prejudice for failure to state a claim.  Defendants Scribner, Watson, Ortiz, Lowden, Ruiz and Does 5 and 11-14 were dismissed from this action based on Plaintiff's failure to state any claims upon which relief may be granted against them.   Plaintiff has made no effort to identify Does 1 or 2, nor made any attempt to prosecute this action against these Defendants. Does 1 and 2 should therefore be dismissed.

2

entered by the District Court, adopting the findings and recommendations of the Magistrate Judge (ECF No. 101.)   Summary judgment was granted in Defendants' favor on Plaintiff's claims against Defendants Martinez, German and Northcutt for intentional infliction of emotional distress and assault and battery under California law.   This action now proceeds against Defendants Martinez, German and Northcutt for use of excessive physical force and against Defendant Martinez for deliberate indifference to Plaintiff's serious medical needs.   On May 25, 2010, Defendants Martinez, German and Northcutt filed the motion for summary judgment that is before the Court.  (ECF No. 121.)  Plaintiff has opposed the motion. (ECF No. 137).

## II.   Plaintiff's Allegations

On January 26, 2005, Defendants Martinez, German and Northcutt arrived to escort Plaintiff from the Suicide Unit to the Security Housing Unit.  Plaintiff alleges that during the escort,  Defendants used excessive physical force against him, including throwing him against the wall, smashing his face into the wall, stepping on the chain between Plaintiff's legs, twisting Plaintiff's wrist and fingers upward and pulling them in different directions, and punching Plaintiff in the ribs and stomach while he was pinned to the wall.  (Compl. ¶ 38.)

Plaintiff alleges that "at no time was Plaintiff a threat to anyone or himself.   At no time did Plaintiff display any harmful actions."  (Compl. ¶ 39.)  Defendant Martinez told Plaintiff that his "past actions would not be tolerated."  Id.  Plaintiff was then dragged by Defendants to his cell and thrown on to the floor.[3]  While still in leg irons and handcuffs, he was "socked in the right eye from behind by defendants."  (Compl. ¶ 40.)  Plaintiff's arms were pulled through the tray slot "as far as they could extend."  (Compl. ¶ 41.)  As a result, Plaintiff "began to lose sight

---

[3] In the complaint, Plaintiff alleges that he was dragged by "the Defendants named in paragraphs 13, 14, 15, 16 and 17" to his cell.  These paragraphs refer to Defendants Northcutt, German, Martinez and Does 1 and 2.

in his right eye, loss of feeling in both wrists, left thumb, left point finger, right point finger, and right pinky."  (Compl. ¶ 42.)

Plaintiff alleges that on January 27, 2005, he began calling "man down" and "emergency" in order to obtain medical assistance.  Defendant Martinez came to his cell and then left after asking, "Jacobs, from Tehachapi, right?"  (Compl. ¶ 43.)  Plaintiff's remaining allegations regarding deliberate indifference to his medical needs involve conduct by Doe Defendants 3-4 and 6-10.

### III.   Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> [always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denial of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n. 11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under governing law, Anderson, 477 U.S. at 248; Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Matsushita, 475 U.S. at 588; County of Tuolumne v. Sonora Community Hosp., 263 F.3d 1148, 1154 (9th Cir. 2001).

4

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007).  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's notes on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam)).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985)(aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is not 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

### A.   **Excessive Force**

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement." Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  '[W]hile conditions of confinement may be, and often are, restrictive and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'" Id. (Quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  "What is necessary to show sufficient harm for purposes of the Cruel and Unusual

Punishment Clause depends on the claim at issue . . . ."  <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992).

For excessive force claims, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  <u>Hudson</u>, 503 U.S. at 7.   Although <u>de minimis</u> uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates the Eighth Amendment, regardless of whether or not significant injury is evident."  <u>Id.</u>  at 9-10.

Defendants support their motion with Plaintiff's deposition, documents from Plaintiff's central file, documents from Plaintiff's medical record, the declarations of Defendants Martinez, German and Northcutt, and the declaration of J. Dang, M.D.   Regarding the events at issue, Defendant Martinez declares as follows:

> Jacobs was escorted from the ACH to the SHU on January 26, 2005, by Correctional Officers German, Northcutt and myself.

> The January 26, 2005, escort was uneventful and no excessive force was used against inmate Jacobs.

> During the January 26, 2005, escort Jacobs' restraints were not mishandled causing him physical harm, no one delivered any punches to Jacobs' body, and Jacobs was not punched in the face by Officer German or anyone else once he was in his cell.

> Because of Plaintiff's history of assaultive behavior, Officers Northcutt and German and myself believed it necessary to maintain a secure hold on Plaintiff's restraints during the escort.

> Such a belief is consistent with a good-faith effort to maintain order and discipline.

> Plaintiff's complaint concerning the use of restraints amounts to nothing more than the discomfort normally associated with a secure escort.

> I am not a medical doctor, rather I am a custody officer.

> As far as I knew on January 26, 2005, Jacobs had been medically screened, evaluated, treated at the ACH, and cleared to be re-housed in the SHU.

I had no reason to believe on January 26, 2005, and thereafter, that the health care delivery system was not attending to Jacobs' medical needs.

I did not have the authority to order any kind of medical treatment for Plaintiff – emergent or otherwise.

I could not independently determine or diagnose Plaintiff's medical needs – emergent or otherwise – or prescribe treatment for such.

I could not independently grant or deny Plaintiff's request for emergency medical treatment.

As far as I knew, on January 26, 2005, and thereafter, Jacobs was receiving on-going treatment for his medical condition and I had no reason to believe that Plaintiff was in need of emergency treatment.

(Martinez Decl. ¶¶ 7-19.)   Defendant Northcutt declares the following:

Jacobs was escorted from the ACH to the SHU on January 26, 2005, by Sergeant Martinez, Correctional Officer German, and myself.

The January 26, 2005 escort was uneventful and no excessive force was used against inmate Jacobs.

During the January 26, 2005, escort Jacobs' restraints were not mishandled causing him physical harm, no one delivered any punches to Jacobs' body, and Jacobs was not punched in the face by Officer German or anyone else once he was in his cell.

Because of Plaintiff's history of assaultive behavior, Sergeant Martinez, Correctional Officer German, and myself believed it necessary to maintain a secure hold on Plaintiff's restraints during the escort.

Such a belief is consistent with a good-faith effort to maintain order and discipline.

Plaintiff's complaint concerning the use of restraints amounts to nothing more than the discomfort normally associated with a secure escort.

(Northcutt Decl. ¶¶ 7-12.)   Defendant German declares the following:

7

> Jacobs was escorted from the ACH to the SHU on January 26, 2005, by Sergeant Martinez, Correctional Officer Northcutt, and myself.
>
> The January 26, 2005, escort was uneventful and no excessive force was used against inmate Jacobs.
>
> During the January 26, 2005, escort Jacobs' restraints were not mishandled causing him physical harm, no one delivered any punches to Jacobs' body, and Jacobs was not punched in the face by myself or anyone else once he was in his cell.
>
> Because of Plaintiff's history of assaultive behavior, Sergeant Martinez, Correctional Officer Northcutt, and myself believed it necessary to maintain a secure hold on Plaintiff's restraints during the escort.

(German Decl. ¶¶ 7-10.)

Defendants also submit the deposition transcript of Plaintiff in support of their motion. Plaintiff testified that as he was being escorted, "one of them, I don't know who it was, one of them was trying to trip me. They was trying to provoke me, trip me, kicking my legs, kicking my feet or whatever. So at that point I already knew that something was wrong." (Pltf.'s Dep. 27:19-23.) Plaintiff testified that German and Northcutt were the actual escort officers, and Martinez was there for security. Once they reached the sallyport, Plaintiff testified that the following occurred:

> A. Like I said, as soon as I got in, when I got directly in front of where they feed the food at or whatever, they told me to face the wall. When I turned around and faced the wall, they shoved me up against the wall, the two officers that was holding me. And that's when Sergeant Martinez got to talking about we don't tolerate your past actions and all this. And somebody started socking on me. Started socking me on my back and my side. And then the officer behind me which was Northcutt was twisting my hands up and pulling, trying to pull my – as he's stepping on my leg iron chains, he's pulling me while these officers are socking me from the side and from the back. And this whole time, Martinez, he's trying to tell me we're not going to tolerate your past actions. What you did in the other prison – he tried to say I stabbed a CO in another prison. You stabbed another CO in another prison and all that. It's just a bunch of – it's a bunch of nonsense, man. He's talking about a bunch of incidents he had no knowledge of. You know what I mean? I feel like you're assaulting me for something that was – that allegedly happened in another prison that you have no

8

knowledge of.  You wasn't even there.  You don't know what happened.

Q.  Did Martinez ever physically touch you?

A.  Did he ever physically touch me?  No, he never physically touched me.

Q.  So it was mostly Northcutt and German?

A.  Exactly.  And whoever else was standing behind me.

Q.  Did they pick you up off the ground?

A.  Did they lift me up?  Well, he had my – could he physically lift me up, no but when I mean lift me up because he had his feet on my ankle chains.  So when he's lifting me up, lifting my body up, the ankle chains is pulling my legs, pulling my ankles,  which I had scars and was bleeding from the ankles from that.  So did he like pick me up off the ground where my feet was elevated off the ground, no, he couldn't do that because he was stepping.

Q.  When you say he was picking you up, how was he picking you up?

A.  Well, my hands is like this.

Q.  And what you're doing for the record is you're holding your hands behind your back?

A.  Right.

Q.  Is that where they were handcuffed, behind your back?

A.  Yeah.  So as I hold my hands held behind my back, he got his hands and he's pushing, pushing my body up.  And then he got another hand on my collar, like my neck, whatever, and he's like – you know what I'm saying.  They got me like jacked up against the wall but he had his feet on the leg irons.

Q.  How was he lifting you up with your back against the wall?

A.  No, my back wasn't against the wall.  My face was against the wall.

Q.  Oh, so you were facing the wall?

A.  I was facing the wall.

Q.  Okay.

A.  My hands are behind my back like this and I'm facing the wall and he's pushing like that.

9

Q.  You said Northcutt and German were punching you in your sides and on the back?

A.  I can't say because Northcutt was the one that was holding. But German and the other officers for sure was punching me. They definitely was punching me.

Q.  How hard were they punching you?

A.  It wasn't hard enough.  It wasn't hard enough where it left bruises or nothing like that.

Q.  So they were punching you, but not hard enough to where it would leave a bruise?

A.  No.

Q.  Were they punching hard enough to where it would hurt?

A.  Yeah.  I was figuring, maybe they don't hit that hard.  I don't know.

Q.  Did it seem to you like they were punching hard?

A.  I mean they was punching me.  So whether I was thinking they was punching me hard or not, at that time I really wasn't trying to judge how hard I was being punched.  It was the fact that I was being punched for no reason.

(Id. 29:15-33:25.)

Once Plaintiff arrived at his cell in the SHU, Martinez told him to kneel down so they could remove the leg restraints.  Plaintiff testified that once he kneeled down, "German socked me in my right eye.  Just out of nowhere, just socked me."  Plaintiff testified that he did not provoke German in any way.  (Id. 35:5.)

The Court finds that Defendants German and Northcutt have not met their burden on summary judgment.  Defendants' evidence creates a triable issue of fact as to whether force was used on Plaintiff in a good faith effort to maintain discipline or for the purpose or causing harm. Defendants' declarations establish that neither German nor Northcutt punched Plaintiff once he was in his cell, and that Defendants needed to maintain a secure hold on Plaintiff because of his history of assaultive behavior.  In his deposition, however, Plaintiff testified that he offered no physical or verbal resistance, and that he was repeatedly punched by one Defendant while the

10

other stood on his ankle chain and forced Plaintiff's body up, cutting into his ankles such that scarring resulted.  Plaintiff further testified that Defendant German, without provocation, punched him in the right eye when he was placed in his cell.

Although Plaintiff testified that he was not punched hard enough to leave bruises,  the relevant inquiry is not whether Plaintiff's injuries are *de minimis*, but whether the use of force was *de minimis*.  See Wilkins v. Gaddy, 559 U.S. 34, 37 (2010)("Injury and force … are only imperfectly correlated, and it is the latter that ultimately counts.")  The degree of Plaintiff's injuries only serves as evidence of the degree of force used, it does not conclusively resolve the question of whether the degree of force was *de minimis*.  See Wilkins, 559 U.S. at 37 ("The extent of injury may . . . provide some indication of the amount of force applied.")  Defendants cannot escape liability for the use of force simply because Plaintiff failed to suffer any treatable injury.  "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."  Id.; Hudson, 503 U.S. at 9 ("In the excessive force context, society's expectations are different.  When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated.  This is true whether or not significant injury is evident.") (internal citations omitted).  This case therefore turns on whether the force used in a good faith effort to restore order or maintain discipline.  The extent of Plaintiff's injury will be a factor in determining whether the force used by Northcutt and German was excessive.

As to Defendant Martinez, the Court finds that he has met his burden on summary judgment.  Defendant Martinez declared that he did not use force on Plaintiff, and that it was necessary to maintain a secure hold on Plaintiff due to his history of assaultive behavior.  In his deposition, Plaintiff testified that Martinez did not physically touch him.   In his opposition, Plaintiff establishes that Martinez was present, but does not come forward with any evidence the

11

Martinez struck Plaintiff, or in any way subjected Plaintiff to excessive force.[4] The complaint, considered as a declaration, establishes that Martinez was one of five officers that dragged Plaintiff to his cell.   Nothing in the complaint establishes that Martinez subjected Plaintiff to excessive force.  The motion for summary judgment should therefore be granted in Defendant Martinez's favor on Plaintiff's claim of excessive force. [5]

## B.   Deliberate Indifference

Plaintiff alleges that Sergeant Martinez was deliberately indifferent to his serious medical needs when he did not provide emergency medical services on January 27, 2005.  In order to meet his burden on summary judgment, Defendant Martinez must come forward with evidence that establishes the lack of existence of a triable issue of fact – evidence that Sgt. Martinez did not know of and disregarded a serious risk to Plaintiff's health or safety.

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 297 (1991).

The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 4 (1992); Wilson, 501 U.S. at 297.  Deliberate indifference is present

---

[4]  The  complaint is signed under penalty of perjury.  A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief.  McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)(per curiam); Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); Fed. R. Civ. P. 56(c)(4).  The Court therefore considers the complaint, along with Plaintiff's opposition, as declarations in support of his opposition to Defendants' motion for summary judgment.

[5]  In the complaint, Plaintiff alleges generally that he was "socked in the right eye from behind by Defendants named in paragraphs 13, 14, 15, 16, 17" while kneeling on the floor of his cell.  In his deposition, Plaintiff clarifies, specifically testifying that Defendant Martinez did not physically touch him.  Plaintiff is clear in his deposition testimony that German was the only Defendant that hit him once he was in his cell.  Plaintiff makes no argument in his opposition that any other Defendants struck him while he was in his cell.  (Pltf.'s Dep. 34:25.)

"when prison officials deny, delay or intentionally interfere with medical treatment," or it may be shown "by the way . . . prison physicians  provide medical care."  <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992)(citations omitted).

Defendant submits the declaration of Dr. Dang, M.D. in support of his motion. Regarding the events at issue, Dr. Dang declares the following:

> I am familiar with the medical records of inmate George E. Jacobs, CDCR # J-48666.
>
> Upon his arrival at CSP-COR on January 24, 2005, Jacobs was admitted to the Acute Care Hospital (ACH).
>
> Jacobs was discharged from the ACH on January 26, 2005.
>
> I understand that Jacobs alleges that once he was in his assigned cell on January 26, 2005, he was punched once by Officer German to the right side of the face.
>
> I further understand that the alleged blow lacked sufficient force to render Jacobs unconscious, knock him to the ground, or cause any bleeding.
>
> I further understand that Jacobs claims that Officer German's single light blow to the side of his head caused a loss of vision, the swelling of his right eye, and pus from both eyes.
>
> On January 24, 2005, I examined Jacobs at the CSP-COR ACH.
>
> Jacobs related a medical history of glaucoma in his right eye.
>
> Jacobs also claimed that he could not open his right eye for the last 24 hours and that he had pus coming out of both eyes.
>
> Upon examination, I found that both eyes were red with exudate.
>
> I recommended that Jacobs' glaucoma medication be continued and I added a prescription of neosporin ophthalmic solution to treat his eye infection.
>
> Glaucoma is the name for a group of eye diseases that damage the optic nerve.
>
> Glaucoma usually affects side (peripheral) vision first.
>
> If glaucoma is not treated, vision loss will continue, resulting in total blindness over time.

If glaucoma is identified early and treated appropriately, good eyesight can usually be maintained.

Jacobs first complained of pain in his right eye on October 23, 2003, and glaucoma treatment was commenced.

On November 9, 2004, Jacobs requested to see the eye doctor for his glaucoma, and stated that he had been taking eye medicine for about a year.

Jacobs also stated on November 14, 2004, that he was suffering from vision impairment and pain in his right eye and that he had this problem for the past 15 months.

Jacobs' medical administration record shows that Jacobs was non-compliant with 16% of his medication dosages during the first six months of treatment.

During his January 24, 2005, initial health screening following his transfer to CSP-COR, Jacobs complained of glaucoma, for which he was receiving medication.

Because Jacobs had been suffering from vision impairment and pain in his right eye since October 23, 2003, and had been non-compliant with his medication, the substantial factor in his loss of vision, swollen eye, and pus, after January 26, 2005, was his pre-existing condition of glaucoma and eye infection.

It is medically improbable that a single light blow to the side of Jacobs, head on January 26, 2005, caused his loss of vision, swollen eye, and pus.

(Dang Decl. ¶¶2-23.)

In his deposition, Plaintiff testified that he told Martinez "I'm like man, I need some medical treatment.  I can't see out of my eye and my hands are numb.  You know what I mean. He just laughed and walked away."  Plaintiff also testified that later that same day he was sent to the ACH.  (Pltf.'s Dep. 42:20-22, 43:21.)   In his declaration, Sergeant Martinez established that as far as he knew, Plaintiff had been medically screened, evaluated, treated at the ACH, and cleared to be re-housed in the SHU.  Sgt. Martinez declared that he did not have the authority to order any kind of medical treatment for Plaintiff – emergent or otherwise.  (Martinez Decl. ¶¶ 13-16.)

14

The Court finds that Defendant Martinez has met his burden on summary judgment. Defendant has come forward with evidence that establishes a lack of existence of a triable issue of fact as to whether Defendant Martinez was deliberately indifferent to a serious medical need of Plaintiff's. Dr. Dang's declaration establishes that the medical condition Plaintiff complained of was, in his professional opinion, caused by glaucoma, a chronic condition. Defendant's declaration establishes that he is not a medical professional and had no authority to send Plaintiff to the medical clinic. Defendant's declaration establishes that Plaintiff was medically cleared for placement in the SHU. Plaintiff's deposition establishes that, despite Martinez's refusal to send Plaintiff to the ACH, Plaintiff was seen at the ACH later that day. There is no evidence that Defendant Martinez knew of an objectively serious medical condition of Plaintiff's, and acted with disregard to that condition. The burden now shifts to Plaintiff to come forward with evidence that Defendant Martinez knew of and disregarded a serious medical condition of Plaintiff's.

In his opposition, Plaintiff declares that he told Martinez that his eye was injured and that he needed medical attention. Plaintiff's declaration establishes that Martinez failed to summon medical help or send Plaintiff to the ACH for treatment. That Defendant Martinez failed to respond to Plaintiff's eye condition does not subject him to liability. There is no evidence that Martinez was aware of an objectively serious medical condition. Even if Plaintiff were able to offer evidence that he suffered from an objectively serious condition, the evidence establishes, without dispute, that Plaintiff was seen that same day. Mere delay in medical treatment does not constitute deliberate indifference. Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 407 (9th Cir. 1985). A plaintiff must show the delay caused him serious harm. But see McGuckin, supra at 1060 (plaintiff not required to show "substantial harm"). There is no evidence that, in the view of a medical professional, any delay in Plaintiff's medical care on January 27, 2005, caused him serious harm. Judgment should therefore be entered in favor of Defendant Martinez on this claim.

**IV.      Conclusion and Recommendation**

The Court finds that Defendant Martinez has come forward with evidence that establishes, without dispute, that he did not subject Plaintiff to excessive force and was not deliberately indifferent to a serious medical need of Plaintiff's.   The Court finds that a triable issue of fact exists as to whether Defendants German and Northcutt subjected Plaintiff to excessive force. Accordingly, IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment be granted in favor of Defendant Martinez and denied as to Defendants German and Northcutt on Plaintiff's claim of excessive force, be granted in favor of Defendant Martinez on Plaintiff's claim of deliberate indifference to his medical needs, and that  Does 1 and 2 be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S. C. § 636(b)(1)(B).  Within thirty days after being served with these findings and recommendations, plaintiff may file written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time waives all objections to the judge's findings of fact.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1988).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   **April 10, 2014**

**/s/ Gary S. Austin**

UNITED STATES MAGISTRATE JUDGE

16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28